UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PARNELL SEATON,

                Plaintiff,                        CIVIL ACTION NO. 08-10549

                v.                        DISTRICT JUDGE BERNARD A. FRIEDMAN

GOOD and BERTHIAUME,                MAGISTRATE JUDGE VIRGINIA M. MORGAN

                Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

        Plaintiff, an inmate at the Standish Maximum Correctional Facility (SMF) in Standish,

Michigan, filed a *pro se* civil rights action under 42 U.S.C. § 1983 against two Michigan

Department of Corrections (MDOC) employees, alleging that they denied plaintiff his right to

petition the government for redress of grievances under the First Amendment to the United

States Constitution, his right to equal protection under the Fourteenth Amendment to the United

States Constitution, and his right to due process of law under the Fourteenth Amendment to the

United States Constitution.  The matter comes before the Court on Defendants' Motion for

Summary Judgment (D/E #13).  Plaintiff has filed a response to defendants' motion for summary

judgment (D/E #17).  For the reasons discussed below, this Court recommends that defendants'

motion be **GRANTED** and summary judgment be entered with respect to all of plaintiff's

claims.

## II. Background

### A. Complaint

On February 6, 2008, plaintiff filed his complaint in this matter (D/E #1).  According to the complaint, defendant Good was the Hearings Investigator at SMF and defendant Berthiaume was a Sergeant at SMF at all times pertinent to this action.  (Complaint, ¶¶ 3-4)  Defendants are being sued in both their official and individual capacities.  (Complaint, ¶ 5)

In the complaint, plaintiff alleges that, on August 2, 2007, an inmate named Alex Goldman walked up to plaintiff and struck plaintiff in the face with a cleansing bottle. (Complaint, ¶ 7)  Plaintiff then wrestled Goldman to the ground.  (Complaint, ¶ 8)  Goldman and plaintiff were eventually separated and restrained by prison guards.  (Complaint, ¶ 9) Additionally, they were ordered to lie on the floor so they could be handcuffed.  (Complaint, ¶ 9) Prior to lying on the floor, plaintiff removed a paint scraper from his back pocket and laid it on the floor.  (Complaint, ¶ 10)

Later that day, plaintiff learned that Goldman had alleged that Goldman was the victim of an assault.  (Complaint, ¶ 11)  Plaintiff then wrote a request asking that he be able to personally view any videotapes or still photographs of the incident, receive a copy of all statements made by Goldman, and receive a copy of all statements made by people Goldman had listed as witnesses.  (Complaint, ¶ 12)

On August 3, 2007, defendant Berthiaume came to plaintiff's cell and read plaintiff two misconduct charges against plaintiff written by other correctional officers.  (Complaint, ¶ 14)

Berthiaume also asked plaintiff if plaintiff wished to make a statement and plaintiff gave him the request for evidence that plaintiff had written. (Complaint, ¶ 15) Berthiaume attached plaintiff's request to the major misconduct report and noted the attachment in the report itself. (Complaint, ¶ 16)

Later that day, a Sergeant Hughes came to plaintiff's cell and read plaintiff a misconduct charge written against plaintiff by Berthiaume. (Complaint, ¶ 17) Hughes also asked plaintiff if plaintiff wanted to make a request for any documents and witnesses, and plaintiff informed him of plaintiff's prior requests. (Complaint, ¶ 18) Hughes told plaintiff to "furnish the information to the Hearings Investigator." (Complaint, ¶ 20)

In the afternoon of August 3, 2007, Good came to plaintiff's cell and provided plaintiff with two separate sets of Hearings Investigation Report forms. (Complaint, ¶ 21) Plaintiff informed Good that plaintiff needed the evidence he had requested before he could identify any witnesses. (Complaint, ¶ 22) Good confirmed that plaintiff would have access to any videotape, still photographs, or written statements regarding the incident. (Complaint, ¶ 23)

On August 7, 2007, Good came to plaintiff's cell and provided plaintiff with another Hearings Investigation Report Form. (Complaint, ¶ 24) Plaintiff reiterated to Good that plaintiff needed the evidence he had requested before he could identify any witnesses. (Complaint, ¶ 25) Good again confirmed that plaintiff would have access to any videotape, still photographs, or written statements regarding the incident. (Complaint, ¶ 26)

On August 15, 2007, Good viewed the videotape and found that plaintiff never had any physical contact with Berthiaume during the incident. (Complaint, ¶ 27) Good informed Berthiaume of these findings and suggested that Berthiaume pose for a picture with

Berthiaume's elbow exposed in order to suggest that Berthiaume had suffered an injury during the incident. (Complaint, ¶ 28) Berthiaume agreed to that plan to manufacture evidence and Good placed the photograph into the official administrative record. (Complaint, ¶ 29) Good also falsely declared in his reports that plaintiff had never requested any witnesses or video. (Complaint, ¶ 30)

On August 17, 2007, plaintiff appeared before Hearings Officer Szappan for the adjudication of the misconduct charges. (Complaint, ¶ 31) Plaintiff moved for a continuance of the hearing on the basis that he had never been allowed to view the videotape or any still photographs of the incident, he had not been afforded access to any statements made by Goldman, he had not been allowed access to any witness statements, and he was denied an opportunity to identify his own witnesses. (Complaint, ¶¶ 32-33) Good stated at the hearing that Good had no knowledge of any of plaintiff's requests and that a continuance would not be necessary because he had viewed the videotape and it depicted plaintiff chasing Goldman with a paint scraper in plaintiff's hand. (Complaint, ¶¶ 34-35) Plaintiff disputed Good's narration of what the videotape showed and requested that Berthiaume and Hughes be subpoenaed in order to confirm plaintiff's evidentiary requests. (Complaint, ¶ 36) Plaintiff also noted Berthiaume had written a notation on the misconduct report stating that he had attached plaintiff's written request. (Complaint, ¶ 37) Good then argued that any subpoenas would be a waste of time and that plaintiff was trying "a typical ploy that's used by black prisoners to undermine the adjudicatory proceedings by claiming that they were deprived of their fundamental rights in a white man's justice system." (Complaint, ¶ 38) Good also stated that Berthiaume had told Good that the notation in the report regarding an attachment was a typo. (Complaint, ¶ 39) Szappan

denied plaintiff's request for a continuance without explanation, adopted Good's version of what the videotape depicted, and entered a guilty verdict on each of the charged offenses. (Complaint, ¶¶ 41-42) Szappan also sentenced plaintiff to serve detention from August 18, 2007 to November 2, 2007. (Complaint, ¶ 43)

Plaintiff filed a grievance over Good's lies, but he had no evidence of his requests for evidence because the written request had been removed from the record (Complaint, ¶¶ 46-47) On October 5, 2007, Berthiaume told plaintiff that Berthiaume had attached plaintiff's written request to the major misconduct report. (Complaint, ¶¶ 48-49) Plaintiff also obtained the picture of Berthiaume and the Hearing Investigator Summary Reports discussed above. (Complaint, ¶¶ 50-51) Plaintiff began preparing that evidence in a supplement to an earlier request for rehearing, but he received a denial of that request for rehearing on the same day he was going to mail his supplement. (Complaint, ¶¶ 51-53)

Plaintiff specifically claims that Good's deliberate actions tainted the adjudicatory hearing, as well as any subsequent administrative appeal or request for rehearing, on the misconduct charges and, thereby, violated plaintiff's right to petition the government for redress of grievances under the First Amendment to the United States Constitution. (Complaint, ¶¶ 54-56) Plaintiff also claims that Good and Berthiaume's ploy to manufacture evidence also tainted all of plaintiff's administrative proceedings and, thereby, violated plaintiff's right to petition the government for redress of grievances under the First Amendment to the United States Constitution. (Complaint, ¶ 57)

Plaintiff further claims that Good treated plaintiff differently than others in a similar situation in order to deny plaintiff his rights and, by doing so, violated plaintiff's right to equal

protection under the Fourteenth Amendment to the United States Constitution.  (Complaint, ¶¶ 58-60)

Plaintiff also claims that Good and Berthiaume's conspiracy and manufacturing of evidence stripped plaintiff of his procedural protections and, thereby, violated plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution. (Complaint, ¶¶ 61, 64)  Plaintiff further claims that Good's actions on his own stripped plaintiff of his procedural protections and, thereby, violated plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution.  (Complaint, ¶¶ 61-63, 65-68)

As relief, plaintiff requests injunctive relief preventing Good or Berthiaume from destroying evidence or retaliating against plaintiff, compensatory damages in the amount of $20,000 against Good and Berthiaume together, compensatory damages in the amount of $20,000 against Good, punitive damages in the amount of $20,000 against Good and Berthiaume together, and punitive damages in the amount of $20,000 against Good.  (Complaint, pp. 21-22)

Plaintiff attached a number of exhibits to his complaint.  As Exhibit #1, he attached a Major Misconduct Report dated August 2, 2007, charging plaintiff with "Fighting."  The charge had been reported by Correctional Officer Schmidtke and the report was written by Berthiaume. According to that report, plaintiff and Goldman were working at their porter jobs when plaintiff headed directly toward Goldman and began a physical confrontation.

As Exhibit #2, plaintiff attached a Major Misconduct Report dated August 2, 2007, charging plaintiff with "Possession of a Weapon."  The charge was reported by Correctional Officer Hackworth and the report was written by Berthiaume.  According to the report, plaintiff

had a paint scraper in his hand during the staff's attempts to handcuff him during the altercation between plaintiff and Goldman. The report also contained a photograph of paint scraper.

As Exhibit #3, plaintiff attached a Major Misconduct Report dated August 2, 2007, charging plaintiff with "Assault and Battery (Staff Victim)." The charge had been reported and the report written by Berthiaume. According to that report, when plaintiff was pulled off Goldman, he landed on top of Berthiaume and injured Berthiaume's arm, hip and shoulder.

As Exhibit #4, plaintiff attached a blank "Hearing Investigation Report."

As Exhibit #5, plaintiff attached the Hearing Investigation Report regarding the Possession of a Weapon charge. That report contained plaintiff's statement, in which plaintiff admits to having paint scraper as part of his job and states that, after he was instructed to stop struggling, he told the prison guards that he needed to remove the paint scraper from his pocket so no one would suffer any injuries.

As Exhibit #6, plaintiff attached the Hearing Investigation Report regarding the Assault and Battery (Staff Victim) charge. That report contained plaintiff's statement that he wished to see the videotape of the incident before responding to the charge.

As Exhibit #7, plaintiff attached a photograph of a Berthiaume displaying his injured elbow.

As Exhibit #8, plaintiff attached the Hearing Investigator Summary Report regarding the Fighting charge. That report was dated August 15, 2007 and completed by defendant Good. The report states that plaintiff declined to make a written statement and that plaintiff had not requested any witnesses or video. The report also states that Good provided the video of the incident to the Hearing Officer.

As Exhibit #9, plaintiff attached the Hearing Investigator Summary Report regarding the Possession of a Weapon charge. That report was dated August 15, 2007 and completed by Good. The report states that plaintiff made a written statement and that plaintiff had not requested any witnesses or video. That report also states that Good provided the video of the incident to the Hearing Officer.

As Exhibit #10, plaintiff attached the Hearing Investigator Summary Report regarding the Assault and Battery (Staff Victim) charge. That report was dated August 15, 2007 and completed by Good. That report states that plaintiff declined to make a written statement and that plaintiff did not request any witnesses or video. The report also states that Good provided the video of the incident to the Hearing Officer and attached the photograph of Berthiaume to the report.

As Exhibits #11 and #12, plaintiff attached the Major Misconduct Hearing Report on his Fighting and Possession of a Weapon charges. The report was dated and it identified the Hearing Officer as M. Szappan. Szappan found plaintiff guilty of both charges. According to that report, Szappan reviewed plaintiff's statement, Goldman's statement and photographs with plaintiff. Szappan also wrote that, while plaintiff requested three witnesses, those witnesses were not necessary in his case. In the "Reasons for Finding" section of the hearing report, Szappan found the misconduct report prepared by Good credible and convincing, because it was detailed and made sense. Szappan also noted that plaintiff admitted to fighting, plaintiff did not plead self-defense at the hearing, and the video showed plaintiff getting angry and coming at Goldman with a paint scraper.

As Exhibit #13, plaintiff attached the Major Misconduct Hearing Report on Assault and Battery (staff victim) charge. Szappan was the Hearing Officer and he found plaintiff guilty of the charge. According to the report, plaintiff was present at the hearing and plaintiff stated that he had told the staff that he did not want to fall during the incident, he does not know if he fell on Berthiaume, he was not trying to resist staff, and that any resistence was unconscious. Szappan found the misconduct report written by Good credible and convincing because it was detailed and made sense. Szappan also noted that Berthiaume was unequivocal in his statement while plaintiff was uncertain regarding the staff's attempt to break up an altercation and plaintiff's subsequent resistence.

As Exhibit #14, plaintiff attached the grievance forms resulting from a grievance he filed regarding staff corruption on August 23, 2007. As Exhibit #15, plaintiff attached the Affidavit of John Marcel Cater, another inmate at SMF. As Exhibits #16 and #17, plaintiff attached Request for Rehearing Forms. As Exhibit #18, plaintiff attached a Supplement to a Request for Rehearing.

## B. Motion Before the Court

On April 25, 2008, defendants filed the motion for summary judgment before the Court (D/E #13). In that motion, defendants argue that they are entitled to summary judgment because plaintiff's claim was barred by the "favorable termination doctrine." Defendants also argue that they are entitled to qualified immunity because plaintiff received all the process he was due,

plaintiff failed to state a claim for denial of access to the courts, and plaintiff failed to state a claim for violation of the equal protection clause.

On May 27, 2008, plaintiff filed a response to defendants' motion for summary judgment (D/E #17). In that response, plaintiff notes that, while Defendants moved for, and received, a stay of discovery prior to filing their motion for summary judgment, they now argue that plaintiff has no evidence supporting his claim. According to plaintiff, defendants cannot be allowed to allowed to withhold evidence from plaintiff so that they can get summary judgment on the basis of their false and misleading arguments. Plaintiff also argues that the documentation and videotape that plaintiff has requested will verify the allegations in plaintiff's complaint. Plaintiff further argues that defendants have misapplied the "favorable termination doctrine" because plaintiff's lawsuit is not an attack on either a judgment of criminal conviction or the duration of his sentence. With respect to plaintiff's denial access to the courts claim, plaintiff argues that because defendants carried out acts that deprived plaintiff of effective and meaningful access to the administrative appellate forums, they are not entitled to summary judgment. With respect to plaintiff's equal protection claim, plaintiff argues that his claim is based on race discrimination. Lastly, plaintiff argues that defendants are not entitled to qualified immunity because genuine issue of material fact exists with respect to each of plaintiff's claims.

## III. Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary

judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

### A. Claims Against Defendants in Their Official Capacities

While defendants do not make any specific arguments relating to the claims against them in their official capacities, those claims should clearly be dismissed.  Title 28 U.S.C. §

1915(e)(2)(B)(ii) permits the *sua sponte* dismissal of an *in forma pauperis* suit when the Court determines that the claimant has failed to state a claim upon which relief may be granted and, in this case, plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution,

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any foreign State. [U.S. Const. amend. XI.]

Courts have construed that language broadly and the Eleventh Amendment generally bars suits in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Skinner v. Govorchin, 463 F.3d 518, 524 (6th Cir. 2006).[1] "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief." Doe, 21 F.3d at 736. Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money

---

[1]As discussed by the Sixth Circuit in Ernst v. Rising, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with a host of exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the Federal Government brings the lawsuit. Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation. Ernst, 427 F.3d at 358. None of these exceptions are applicable in this case.

damages, that is not necessarily the case. See Cory v. White, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); Doe, 21 F.3d at 736-737. Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants. Doe, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself. Doe, 21 F.3d at 737. The State of Michigan, however, has not consented to civil rights suits in federal court. See Johnson v. Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004); Abick v. Michigan, 803 F.2d 874, 877 (6th Cir. 1986); see also Hill v. Michigan, 62 Fed. Appx. 114, 115 (6th Cir. 2003). Therefore, to the extent plaintiff's claims against defendants are against them in their official capacities, the claims are barred by the Eleventh Amendment.

## B. Claims Against Defendants in Their Individual Capacities

### 1. Favorable Termination Doctrine

Defendants argue that plaintiff's claims are barred by the "Favorable Termination" doctrine as described in Heck v. Humphrey, 512 US 477; 114 S Ct 2364; 129 L Ed 2d 383 (1994) and Edwards v. Balisok, 520 US 641; 117 S Ct 1584; 137 L Ed 2d 906 (1997). According to defendants, because plaintiff's convictions on the assault, fighting and possession of a weapon major misconducts have not been overturned by a state agency or in a state circuit court pursuant to M.C.L. § 791.255, plaintiff's claims related to those major misconducts are barred.

The United States Supreme Court has held that a prisoner in state custody cannot use a

§ 1983 action to challenge "the fact or duration of his confinement."  Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); see also Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).  Consequently, a § 1983 action is barred when a state prisoner challenges the fact or duration of his confinement, and seeks either "immediate release from prison," or the "shortening" of his term of confinement.  Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005); quoting Preiser, 411 U.S. at 482.

Several Supreme Court cases have applied the above law in the context of prison disciplinary hearings.  In Preiser, the § 1983 action involved a challenge to prison officials' revocation of good-time credits by means of constitutionally deficient disciplinary proceedings. As relief, plaintiffs sought restoration of good-time credits and, in effect, demanded immediate release or a shorter period of detention.  In the Supreme Court's view, such an action attacks "the very duration of . . . physical confinement," and, therefore, it could not be pursued under § 1983. Preiser, 411 U.S. at 487-488.

In Wolff, like Preiser, state prisoners brought a § 1983 action challenging prison officials' revocation of good-time credits by means of constitutionally deficient disciplinary proceedings.  Wolff, 418 U.S. at 553.  The Supreme Court held that, while the prisoners could not use § 1983 to obtain restoration of the credits, they could use § 1983 to obtain a declaration ("as a predicate to" their requested damages award) that the disciplinary procedures were invalid.  Wolff, 418 U.S. at 555.  The prisoners could also seek "by way of ancillary relief[,] an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations."

Wolff, 418 U.S. at 555. In the Supreme Court's view, victory on either of those claims would not necessarily have meant immediate release or a shorter period of incarceration because the prisoners attacked only the "wrong procedures, not ... the wrong result ( i.e., [the denial of] good-time credits)." Heck, 512 U.S. at 483, discussing Wolff.

Similarly, in Wilkinson, the Supreme Court concluded that the plaintiffs' claims were cognizable under § 1983 where the plaintiffs sought relief that would render invalid the state procedures used to deny parole eligibility and parole suitability. As found by the Court, neither of the plaintiffs in that case sought an injunction ordering his immediate or speedier release into the community, and a favorable judgment would not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." Wilkinson, 544 U.S. at 82, quoting Heck, 512 U.S. at 487. Success for the first plaintiff did not mean immediate release from confinement or a shorter stay in prison; it meant at most new a parole eligibility review that could, at most, speed consideration of a new parole application. Wilkinson, 544 U.S. at 82. Success for the other plaintiff meant at most a new parole hearing at which parole authorities might, in their discretion, decline to shorten his prison term. Wilkinson, 544 U.S. at 82.

As the above cases show, the Supreme Court has focused on the need to ensure that state prisoners use only habeas corpus, or similar state remedies, when they seek to invalidate the duration of their confinement -either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. In this case, plaintiff's seeks injunctive relief preventing Good or Berthiaume from destroying evidence or retaliating against plaintiff, compensatory damages in the amount of $20,000 against Good and Berthiaume together, compensatory damages in the amount of

$20,000 against Good, punitive damages in the amount of $20,000 against Good and Berthiaume together, and punitive damages in the amount of $20,000 against Good. (Complaint, pp. 21-22) Such relief does not necessarily imply the invalidity of plaintiff's conviction or sentence and it would have no effect on the duration of plaintiff's sentence. The United States Supreme Court has held that <u>Heck</u> and <u>Edwards</u> are not "implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence" <u>Muhammad v, Close</u>, 540 U.S. 749, 124 S.Ct. 1303, 1304-1306, 138 L.Ed.2d 32 (2004) (per curiam) and, therefore, summary judgment should not be granted on that basis.

### 2. Qualified Immunity

Defendants also argue that plaintiff's claims against them are barred by defendants' qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. <u>Saucier</u>, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. <u>Saucier</u>, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was

clearly established.  "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Saucier, 533 U.S. at 201.

However, a "court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns'" such as whether there was a constitutional violation,  Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988).  Here, each of plaintiff's claims will be examined to determine if there exists a genuine issue of material fact involving an issue on which the question of immunity turns.

### a. Procedural Due Process Claim

As discussed above, plaintiff alleges that Good and Berthiaume's conspiracy and manufacturing of evidence stripped plaintiff of his procedural protections and, thereby, violated plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution.  (Complaint, ¶¶ 61, 64)  Plaintiff further claims that Good's actions on his own stripped plaintiff of his procedural protections and, thereby, violated plaintiff's right to due process of law under the Fourteenth Amendment to the United States Constitution.  (Complaint, ¶¶ 61-63, 65-68)

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law.  "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 125

S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). Accordingly, a procedural due process analysis addresses two questions. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted). Put another way, to state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. See Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999), cert. denied, __ U.S. __, 120 S.Ct. 1423 (2000).

Initially, this Court would note that defendants do not dispute that plaintiff had a liberty interest protected by the due process clause.[2] Moreover, while plaintiff argues that defendants brought false charges and manufactured evidence against him, false accusations of misconduct

---

[2]A liberty interest may arise from two distinct sources-from the implicit guarantees of the Due Process Clause itself, or as a result of state action. Bazzetta v. McGinnis, 430 F.3d 795, 803 (6th Cir. 2005). With regard to the Due Process Clause itself, protected liberty interests are created if corrections officials impose restraints upon the prisoner which "exceed [the prisoner's] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See also Bazzetta, 430 F.3d at 803-804. With regard to state action, a liberty interest arises where the state's regulations impose "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[ ][an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. See also Bazzetta, 430 F.3d at 803. To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case. Sandin, 515 U.S. at 484.

against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing.  See Cale v. Johnson, 861 F.2d 943, 953 (6th Cir. 1988 (Nelson, J. concurring); Freeman v. Rideout, 808 F.2d 949, 951 (2d. Cir. 1986); Jackson v. Madery, 138 Fed. Appx. 656, 662-663 (6th Cir. 2005); Cromer v. Dominguez, 103 Fed. Appx. 570, 573 (6th Cir. 2004).  Therefore, the dispute in this case is turns on whether the misconduct hearing was fair.

Plaintiff first argues that the hearing was not fair because he was not allowed to call witnesses in his defense.  The United States Supreme Court has noted that an inmate should be allowed to call witnesses in his defense when doing so will not be unduly hazardous to institutional safety or correctional goals.  Wolff v. McDonnel, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  See also King v. Wells, 760 F.2d 89, 93 (1985).  However, prison officials may refuse to call a witness because of irrelevancy, lack of necessity or hazards presented in individual cases.  Wolff, 418 U.S. at 566; King, 760 F.2d at 93.  In this case, the Major Misconduct Hearing Reports expressly state that Szappan denied plaintiff's request for witnesses because the requested witnesses were unnecessary as plaintiff was not arguing self-defense.  Such a finding comports with the statements in Wolff and King that prison officials may disallow witnesses where they are unnecessary or irrelevant.  Moreover, plaintiff's own complaint, in which plaintiff admits to wrestling Goldman to the ground after Goldman threw a cleansing bottle in plaintiff's face (Complaint, ¶¶ 7-8) confirms Szappan's finding regarding witnesses and the lack of a self-defense claim.   Thus, plaintiff does not have an absolute right to

call witnesses in his defense at a misconduct hearing and the adjudicatory hearing remained fair despite plaintiff's inability to do so in this case.[3]

Plaintiff also appears to argue that the misconduct hearing was unfair because he was denied access to the videotape of the incident, the videotape showed that plaintiff had no physical contact with Berthiaume, and Szappan merely adopted Good's version of what happened. As a preliminary matter, this Court would note that it is unclear as to whether Szappan used the videotape in making his decision. In the Major Misconduct Hearing Report relating to the charges of fighting and possession of a weapon, Szappan wrote that he reviewed plaintiff's statement, Goldman's statement and photographs with plaintiff. Szappan also wrote that the video of the incident showed plaintiff getting angry and coming at Goldman with a paint scraper, but it is unclear if Szappan actually viewed the videotape or relied on Good's description of its contents. In the Major Misconduct Hearing Report relating to the assault and battery charge, Szappan wrote that he relied on the misconduct report, Berthiaume's unequivocal statement and plaintiff's uncertainty in rendering his decision.

Federal district courts do not sit as appellate courts to review the factual findings of hearing officers in prison misconduct hearings. To the extent that there was a dispute as to the

---

[3]In a similar vein, plaintiff also argues that his due process rights were violated because Szappan denied his request for a continuance so that plaintiff could gather witnesses. According to plaintiff, his request for a continuance was denied without explanation. This Court would note that Szappan is not a defendant in this case and plaintiff fails to describe how defendants played a role in the denial of the continuance request. To the extent plaintiff argues that the denial of the continuance request rendered the adjudicatory hearing unfair, Szappan expressly found that witnesses were unnecessary because plaintiff was not claiming self-defense. Szappan also expressly noted the lack of necessity in calling witnesses as the basis for his denial of plaintiff's continuance request.

factual circumstances surrounding any given incident, it was the function of the hearing officer, not this Court, to resolve it. Section 1983 does not extend to plaintiff a right to relitigate in federal court evidentiary questions arising in administrative disciplinary proceedings. See Wood v. Strickland, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Moreover, "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). See also Macy v. Hopkins County School Bd. of Educ., 484 F.3d 357, 367 (6th Cir. 2007). In this case, while plaintiff may be dissatisfied with the results of the misconduct hearing, he cannot challenge the factual determinations and outcome of the hearing by merely alleging that his due process rights were violated. Plaintiff received a fair hearing and defendants are entitled to summary judgment as to plaintiff's due process claim.

Plaintiff does argue that any decision on defendants' motion would be premature given the lack of discovery in this case. Summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery, but the non-movant bears the obligation to inform the district court of its need for discovery, however. Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 627 (6th Cir. 2002). Thus, before a summary judgment motion is decided, the non-movant must file an affidavit pursuant to Fed. R. Civ. P. 56(f) that details the discovery needed, or file a motion for additional discovery. Abercrombie & Fitch Stores, Inc., 280 F.3d at 627. Specifically, Fed. R. Civ. P. 56(f) provide that, if a party

opposing a motion for summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."

Here, plaintiff objected to defendants' motion to stay discovery on the basis that he needed certain evidence to prove his claim (D/E #14).  Moreover, while plaintiff did not file an affidavit pursuant to Fed. R. Civ. P. 56(f) when responding to defendants' motion for summary judgment, he did discuss his need for discovery in order to properly respond to the motion (D/E #17) and he subsequently filed an affidavit describing the specific discovery he needs (D/E #23). Plaintiff has consistently requested discovery in this action and requiring, as a part of its response to the summary judgment motion, a Rule 56(f) affidavit, a motion for new discovery, or recitation of arguments rejected by this Court in the order staying discovery simply to preserve the matter would ignore plaintiff's arguments and unduly exalt form over substance.  Making the argument once should be enough.

When a motion for summary judgment is filed, the burden is on the party seeking additional discovery to demonstrate why such discovery is necessary.  <u>Summers v. Leis</u>, 368 F.3d 881, 887 (6th Cir. 2004).  A number of different factors are applicable to such claims, such as (1) when the non-moving party learned of the issue that is the subject of the desired discovery, (2) whether the desired discovery would have change the ruling, (3) how long the discovery period had lasted, (4) whether the non-moving party was dilatory in its discovery efforts, and (5) whether the moving party was responsive to discovery requests.  <u>Plott v. General Motors Corp.,</u> <u>Packard Elec. Div.</u>,  71 F.3d 1190, 1196 -1197 (6th Cir. 1995)

In this case, plaintiff has failed to meet his burden of demonstrating that discovery is necessary. While plaintiff has consistently sought discovery, his specific requests are irrelevant. Plaintiff requests, among other things: Goldman's statement, witness statements, documentation showing that Good viewed the videotape, the videotape itself, and the documentation verifying the date Berthiaume posed for the picture. Plaintiff's requested discovery goes to the underlying misconduct charges and not to whether plaintiff received a fair hearing. As discussed above, federal district courts do not sit as appellate courts to review the factual findings of hearing officers in prison misconduct hearings and, to the extent that there was a dispute as to the factual circumstances surrounding any given incident, it was the function of the hearing officer to resolve it. See Wood, 420 U.S. at 326. Given that plaintiff's requested discovery is not likely to lead to admissible evidence in this case, he has failed to demonstrate the need for additional discovery and a decision on defendants' motion should not be deferred. See Plott, 71 F.3d at 1197 (finding that the district court did not abuse its discretion in denying the plaintiff's motion for additional discovery and refusing to defer summary judgment under Rule 56(f) where the plaintiff was dilatory in his efforts to secure the information on which he bases his claim and where, even if the plaintiff had received the materials he wanted, the case's outcome would be the same because the additional information sought was irrelevant).

**b. Denial of Access to the Courts Claim**

As discussed above, plaintiff claims that Good's deliberate actions tainted the adjudicatory hearing, as well as any subsequent administrative appeal or request for rehearing, on the misconduct charges and, thereby, violated plaintiff's right to petition the government for redress of grievances under the First Amendment to the United States Constitution. (Complaint,

¶¶ 54-56)  Plaintiff also claims that Good and Berthiaume's ploy to manufacture evidence also tainted all of plaintiff's administrative proceedings and, thereby, violated plaintiff's right to petition the government for redress of grievances under the First Amendment to the United States Constitution.  (Complaint, ¶ 57)

Prison inmates have a fundamental right of access to the courts, see Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), but the right is not an absolute one:

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration. [Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).]

Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only.  A litigant seeking to prove denial of access to the courts must show prejudice to pending litigation.  The court will not presume prejudice. Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985).

In this case, defendants are entitled to summary judgment as to plaintiff's claim that they denied him access to the courts.  Plaintiff was able to file this action alleging violations of his constitutional rights.  Moreover, plaintiff had rights in state court.  MCL § 791.254 provides that plaintiff could have sought rehearing of his misconduct in state court and MCL § 791.255 provides that a prisoner aggrieved by a final decision or order of a hearings officer may seek judicial review of the final decision or order in state court.

Plaintiff argues that defendants' actions actually rendered any state court remedies ineffective and, therefore, defendants denied plaintiff access to the courts.  "[I]f a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts."  Swekel v. City of River Rouge, 119 F.3d 1259, 1260 (6th Cir.1997).  See also Boone v. Spurgess, 385 F.3d 923, 931 (6th Cir. 2004)  In Swekel, the plaintiff's husband had been fatally struck by two cars, one of which was alleged to have been driven by a high-ranking police officer or his son. Swekel claimed that the initial officer who filed a report mentioning two cars was taken off the case; that the daily log sheet allegedly containing the record of two cars disappeared; that the police failed to perform forensic tests on the deceased's clothing; and that the police department told the responding officer not to attend the preliminary hearing, ignored anonymous tips pointing to the alleged second driver, and failed to disclose those anonymous tips even after the plaintiff communicated to the police department that she suspected the man in question.  Swekel, 119 F.3d at 1260-61. Subsequently, the district court dismissed the plaintiff's  case *sua sponte* and the Sixth Circuit affirmed the dismissal because the plaintiff had failed to demonstrate that she could not succeed in a state court suit against the second driver.

In this case, plaintiff cannot demonstrate a denial of access to the courts claim.  Plaintiff knows the identify of the defendants and, while plaintiff alleges that they denied him access to some evidence and manufactured other evidence, all the evidence still exists and would be available in any state court action.  Moreover, plaintiff has no evidence, and did not seek any evidence in his discovery requests, suggesting that the state court could not adequately address the alleged evidentiary problems.  In fact, plaintiff readily admits that he never even attempted to

go to the state court in the first instance.   Before filing an "access to courts" claim, a plaintiff must make some attempt to gain access to the courts, if only to allow the Court to assess whether such access was in fact effective and meaningful.  See Flagg v. City of Detroit, 447 F.Supp.2d 824, 830 (E.D.Mich. 2006) (Rosen, J.).  Plaintiff failed to make such an attempt in this case and there is no indication that an attempt to access the state courts would have been unsuccessful. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The party moving for summary judgment bears the initial burden and that burden may be satisfied by affirmative evidence that negates an element of the non-moving party's claim or by "an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325, 106 S.Ct. 2548.  With respect to plaintiff's denial of access to the courts claim, defendant have pointed to an absence of evidence supporting plaintiff's case, plaintiff has failed to come forward with specific facts demonstrating that there is a genuine issue for trial, and defendants are entitled to summary judgment.

### c. Equal Protection Claim

As discussed above, plaintiff claims that Good treated plaintiff differently than others in a similar situation in order to deny plaintiff his rights and, by doing so, violated plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution. (Complaint, ¶¶ 58-60)

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As the Sixth Circuit has explained, "to withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." Jackson v. Jamrog, 411 F.3d 615, 618 (6th Cir. 2005) quoting Richland Bookmart, Inc. v. Nichols, 278 F.3d 570, 574 (6th Cir. 2002). Inherently suspect distinctions include distinctions based on race, religion, or alienage. Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir. 1998). "Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." Jackson, 411 F.3d at 619; see also Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir. 1998). In this case, plaintiff concedes that he must be a member of a suspect class if his claim will proceed.

Plaintiff's complaint does not identify himself as being a member of any suspect class nor does it describe how Good allegedly treated plaintiff different from others. The complaint does allege that, at the hearing, Good argued that any subpoenas would be a waste of time and that plaintiff was trying "a typical ploy that's used by black prisoners to undermine the adjudicatory proceedings be claiming that they were deprived of their fundamental rights in a white man's justice system." (Complaint, ¶ 38) Nevertheless, even if plaintiff's complaint is construed as alleging that he was treated different on account of race, there is a complete absence of evidence supporting plaintiff's equal protection claim and defendants are entitled to summary judgment. "Different treatment is the initial element of an equal protection violation." Bannum, Inc. v. City of Louisville, 958 F.2d 1354, 1359 (6th Cir.1992); Lothes v. Butler County Juvenile Rehabilitation Center, 243 Fed.Appx. 950, 956 (6th Cir. 2007). Plaintiff has no evidence, and he

does not identify any necessary discovery, that would demonstrate that he was treated differently from others similarly situated.  As discussed above, the party moving for summary judgment can satisfy its initial burden by pointing to "an absence of evidence to support the non-moving party's case."  <u>Celotex</u>, 477 U.S. at 325, 106 S.Ct. 2548.  With respect to plaintiff's equal protection claim, Good has pointed to an absence of evidence supporting plaintiff's case, plaintiff has failed to come forward with specific facts demonstrating that there is a genuine issue for trial, and Good is entitled to summary judgment.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion be **GRANTED** and that they be granted summary judgment.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: September 24, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on September 24, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan